At a Court of Oyer and Terminer held at this term, Daniel O'Niel was indicted and tried for the murder of Sarah Doyle in the second degree, in the city of Wilmington, on the tenth day of June preceding. The prisoner was at the time a *Page 469 
sergeant of police, and with two other police officers of the city had a warrant for the arrest of a man named Wingate who had previously given them no little trouble, for resisting an officer five days before that in his effort to arrest him for disorderly conduct, and who was now seeking to elude their arrest for that offense. Between nine and ten o'clock in the morning of that day he came in sight of him on Church street, and as he at once started in a run from him, he gave pursuit, twice calling to him to stop, but as he paid no attention to it he drew his pistol, a five barrel revolver, from his pocket and fired two shots at him in quick succession, as they were both running as fast as they could up the street, the first whilst he was on the eastern side of it and twenty-five or thirty yards behind Wingate who was then in the middle of it, and the second soon afterwards whilst they were both in the middle of the street and were running rapidly up it. The course of the first bullet was obliquely across and up the street, and soon after it was fired, the deceased, a girl between thirteen and fourteen years of age, who was at the time sweeping dirt from a back yard out at the gate of it on the opposite side of the street some two hundred yards from the place where it was fired, was found lying mortally wounded and unconscious in the back yard, and who expired in a few moments afterwards. The physicians who conducted the post mortem
examination, testified that her death was produced by a medium sized pistol bullet of conical shape, which had entered her head about two inches below her right ear and penetrated it in a horizontal direction to the depth of three inches, and was found embedded in the lower brain. It was also in evidence that it was afterwards found on testing it, to fit the pistol owned and used by the prisoner on that occasion. No one saw her shot or fall, as she was within the enclosure of the yard and entirely out of view of the several witnesses who saw and described the chase and the shooting with more or less discrepancy in the details of it, and the direction in which the pistol was pointed *Page 470 
when first discharged by the prisoner, for it was evident from the testimony of all of them that it could not have been the result of the second fire; and a map of the locality and the surrounding objects prepared for the trial by the city surveyor with his explanation of them, made it difficult to apprehend how it could have been the result, even of the first without a deflection of the bullet from its original direction by contact with some intervening object in its course, as the grade of the street and the the natural surface of the ground rose as much as ten or twelve feet from the position of the prisoner to that of the deceased when both shots were fired, while there was a tight board fence five feet high between them and within some forty or fifty yards of the place in the yard where the deceased fell; and yet, a careful search had failed to discover any trace or indication of the bullet's having hit or touched it any where in its course.
that the case was of great importance in more respects than one, and involved a charge of murder of no ordinary character, as it was against a public officer specially charged with the preservation of the public peace, and the protection of human life and the security of persons against all unlawful violence in the city of which he was a duly appointed and authorized policeman, for an act alleged to have been committed by him under a mistaken view on his part of his official authority as such, and alleged in the indictment to constitute a crime of no less a grade than that of murder of the second degree under the statute. Of all men, such officers are bound to be prudent and circumspect in all matters pertaining to the security of the lives and persons of its citizens against all unauthorized force and violence, however humble, or even lawless in their character they may be.
All public officers are presumed in law to know and understand their official powers and duties, and as they often impose hazardous, as well as grave responsibilities upon them, in the proper exercise and performance of them, they are always acting under the sanction and the protection of the law. But when they exceed their powers they are held to a strict account for it according to the consequences of it. Where an officer has authority to arrest a person and uses proper means to execute that authority, and is resisted and killed in the effort to arrest, *Page 473 
it will be murder by all who take part in the resistance; and they may repel force by force, and resort to whatever force is necessary to overcome the resistance in such a case, and if in such a conflict the party resisting the arrest be killed, the law will hold it to be justifiable and protect the officer. But the officer must not proceed to extremities, until there is a reasonable necessity for his so doing; and in case of an arrest for a misdemeanor merely, and not for a felony, nothing short of resistance reasonably requiring it, will justify the officer in killing the party resisting, and if in attempting to make an arrest for a misdemeanor simply, he kills the offender where there is no resistance, it will be murder. Where he is in pursuit of a felon, or one who has committed a felony with power or authority to arrest him, and he cannot overtake him, he may kill him to prevent his escape from him, and it will be justifiable in law; but where he is in pursuit of a person charged with a misdemeanor merely, and has a warrant to arrest him, and cannot overtake him, he is not justified in killing him to prevent his escape from him, and if he does, he will be guilty of murder.
In this case, O'Niel, the prisoner at the bar, was in pursuit of Wingate, with authority and a warrant as a policeman of the city of Wilmington, to arrest him for the offense with which he was charged, of disorderly conduct and resisting an officer in a previous attempt to arrest him on the 5th of June, five days before that. He was therefore charged with a mere misdemeanor under that complaint, and not with a felony; and even if he had been charged with a felony, the officer would not have been justified in killing him, if he could have overtaken him and arrested him without shooting him. If an act unlawful in itself, such as shooting at a person charged with a mere misdemeanor who is fleeing to escape arrest, is done deliberately with the intention of doing great bodily harm to him, and his death ensues from it, without the officers intending it, or even against his intention, it will be murder, because the act intended to be done by *Page 474 
him would be unlawful and felonious. And a ball which is fired from a gun or a pistol at one person with intent to wound or kill him, carries with it the ingredient of malice when it strikes and kills another and different person. In other words, it A unlawfully and deliberately shoots at B and misses him, but kills C, this is just as much murder as if he had shot and killed B, or had entertained the malice against C, because the act and injury intended to be committed by him was an unlawful act of violence, without justification or excuse, and was committed in utter disregard of the safety of others, and therefore carried with it the implication of malice; and it is implied from the unlawful and felonious attempt to kill another, 01 to do him some great bodily harm by wounding him. And the evidence of such an attempt and such an intention to kill or do great bodily harm, is only the stronger and more conclusive whenever a deadly weapon is used.
Such gentlemen, are the rules and principles of the common law and the law of this State applicable to the case, a law which we have inherited from our English ancestors and which has received the approval of every State in this country. And it is now proper that I should say to you that if you are satisfied from the evidence that the prisoner at the bar. Daniel O'Niel, shot at Alfred Wingate, and that the ball discharged from the pistol at him, struck and killed the unfortunate girl, Sarah Doyle, you should find him guilty of murder in manner and form as he stands indicted. But if you shall not be satisfied from the evidence that her death was caused by a ball discharged from the pistol in the hand of the prisoner, then your verdict should be one of acquittal. For he is either guilty of murder, or guilty of no crime whatever under this indictment. It is not a case of manslaughter.
And you thus perceive that the only material question for you to consider and determine is purely one of fact. Did the shot tired by O'Niel at Wingate cause the death of Sarah Doyle? And upon its proper solution and determination by you depends the momentous result of your *Page 475 
deliberations as to the guilt or innocence of the prisoner at the bar. Now, gentlemen, I trust I may be permitted, in view of the facts disclosed to you by the witnesses, to express the hope and expectation that you will bring to the consideration of this case, a conscious sense of the solemnity of the occasion and of the serious nature of the duty you have been called upon to perform. It is your duty to recall to your recollection all the facts and circumstances in evidence in the case. The reason why the police force was in that neighborhood that morning; the relative positions of O'Niel, Wingate and Sarah Doyle when the shots from the pistols were fired, and the relative distances between them when they were fired, and any variance or conflict in the testimony on those points, and the distance such a pistol would carry. Some of the witnesses heard but one shot, some two, and one of them three shots. Sarah Moore, living next door to the deceased heard but one shot. The uncertainty or doubt as to which of them killed her, if there were three shots fired. That O'Niel fired but two shots seems to be settled by the concurrent testimony of nearly all the witnesses, and no one saw him fire more than twice. And I deem it proper to say further to you that the preponderance in the weight of evidence on the side of the prosecution in a criminal case is not of itself sufficient to warrant the jury in finding a verdict against the accused, but that in this case it must be proved to your satisfaction beyond a reasonable doubt that one of the balls fired by O'Niel, the prisoner, caused the death of Sarah Doyle, the deceased; and if you have a reasonable doubt on that point, the prisoner is entitled to the benefit of it.
 Verdict — "Not Guilty." *Page 476